UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | § |
| | § |
| | § |
| vs. | §   No. 3:16-CR-351-B(01) |
| | § |
| FAVIAN ARREDONDO MENDOZA | § |
| Defendant. | § |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is defendant Favian Arredondo Mendoza's "Request for Reconsideration Based on Supplemental Authorities" (Doc. 123), in which he asks the Court to reconsider its order denying his motion for a sentence modification to add a term of supervised release. For the following reasons, Defendant's request for reconsideration is **DENIED.**

## BACKGROUND

Defendant pleaded guilty to possession with intent to distribute a controlled substance, and on February 10, 2017, the Court sentenced him to 168 months' imprisonment. Doc. 80 at 2. The Court did not sentence him to a term of supervised release because he met the criteria for a safety valve reduction under 18 U.S.C. § 3553 (f)(1)-(5) and would likely be deported upon release from prison. *See* United States Sentencing Guidelines (USSG) § 5D1.1(c); Doc. 70-1 at 12. Defendant appealed his conviction and sentence, but the Fifth Circuit dismissed the appeal as frivolous. Docs. 106-107.

On December 19, 2023, Defendant filed a motion to reduce sentence pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 821 of the USSG. Doc. 113. The Probation Office issued a worksheet finding Defendant eligible for a sentence reduction with a new amended guideline range of 135-168

1

months and supervised release range of 1 to 3 years. Doc. 115. On February 1, 2024, the Court granted Defendant's motion for a sentence reduction under 18 U.S.C. § 3582(c)(2) and Amendments 821 and 825 to the USSG and reduced his sentence to 135 months. Doc. 116. The order amending the judgment did not impose a term of supervised release and explicitly stated that "[e]xcept as otherwise provided, all provisions of the judgment dated 2/9/17 shall remain in effect." *Id.* Defendant did not appeal the February 1, 2024 order. His anticipated release date is currently March 25, 2026. https://www.bop.gov/inmateloc/ (Search for inmate #54593-177; last visited January 2, 2025).

On March 19, 2024, Defendant filed a motion to add a term of supervised release to his judgment so that he could earn time credits under the First Step Act of 2018 (FSA) by participating in recidivism reduction programs, as such credits are only available to prisoners whose sentences include a term of supervised release. *See* Pub. L. No. 115-391, § 101(a), 132 Stat. at 5198 (codified as 18 U.S.C. § 3632(d)(4)(C)). On September 3, 2024, the Court denied Defendant's motion. Doc. 122. Of note, the Court found that, even if the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), allowed a court to add a term of supervised release, Defendant had not shown "an extraordinary and compelling reason for a sentence reduction or otherwise indicated that he seeks compassionate release under this provision." Doc. 122 at 3.

A few weeks later, Defendant filed a motion for reconsideration, presenting supplemental authority showing that some courts have used the compassionate release statute to add supervised release terms to sentences in situations like Defendant's. Doc. 123. The Government filed a response to Defendant's request for reconsideration, and Defendant filed a reply. Docs. 125, 126.

## LEGAL STANDARDS

Two parts of the FSA are relevant to Defendant's seemingly-counterintuitive request for an after-the-fact imposition of a term of supervised release. First, the FSA grants prisoners a right to bring a motion for a sentence reduction, or compassionate release, in federal court even if the BOP opposes the claim. *See, e.g.*, *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021) (noting that the FSA gives prisoners the authority to file their own motions for compassionate release) (citing 18 U.S.C. § 3582(c)(1)(A)). To obtain compassionate release, a defendant must show that a sentence reduction is appropriate after considering the applicable factors set forth in 18 U.S.C. § 3553(a) and that extraordinary and compelling reasons warrant a sentence reduction. *See* 18 U.S.C. § 3582(c)(1)(A)(I). The applicable Sentencing Commission policy statement—USSG § 1B1.13—defines "extraordinary and compelling" reasons warranting a sentence reduction. Section 1B1.13's provisions list six potential "extraordinary and compelling" situations: (1) medical conditions, (2) age, (3) family circumstances, (4) status as a victim of abuse, (5) other comparable/cumulative reasons, and/or (6) an unusually long sentence. *See id.* § 1B1.13(b)(1)-(6) (2024).

Second, the FSA provides that certain prisoners can earn time credits by participating in "recidivism reduction programs" and apply the credit toward time in "prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(C). "The effect of this provision for some prisoners is early release from incarceration and a concomitant transition into post-release supervision." *United States v. Pina*, 01 Cr. 619, 2023 WL 8759830, at *2 (S.D.N.Y. Dec. 19, 2023) (citing *Hurtado v. Warden, FCI Fort Dix*, No. 23 Civ. 2259, 2023 WL 6785079, at *1 (D.N.J. Oct. 13, 2023)) ("[T]he

3

First Step Act provides inmates who engage in recidivism reduction training an opportunity to obtain credits to apply towards their early release."). For a prisoner to be eligible for such an early transfer from incarceration to post-release supervision, the prisoner's sentence must include a term of supervised release. *See* 18 U.S.C. § 3632(d)(4)(C) ("The Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release."); *id.* § 3624(g)(3) (stating that "[i]f the sentencing court included as part of the prisoner's sentence a requirement that the prisoner be placed on a term of supervised release after imprisonment," the prisoner may be transferred to supervised release "at an earlier date, not to exceed 12 months, based on the application of time credits under section 3632"). Further, under 18 U.S.C. § 3632, a prisoner is "ineligible to apply time credits" if he or she is "the subject of a final order of removal under any provision of the immigration laws." *id.* § 3632(d)(4)(E)(I).

## ANALYSIS

### A. *Defendant has not demonstrated extraordinary and compelling reasons for release.*

Here, Defendant, despite engaging in qualifying rehabilitative programming, is unable to obtain time credits towards his release under the FSA because the Court did not impose a term of supervised release when it sentenced him because none was statutorily required and he is likely to be deported upon release from prison. *See* USSG § 5D1.1(c)("The court ordinarily should not impose a term of supervised release in a case in which supervised release is not required by statute and the defendant is a deportable alien who likely will be deported after imprisonment."). Defendant claims that his ineligibility for FSA credits is extraordinary and compelling, arguing that to "subject Defendant to a longer term of incarceration than an otherwise similarly situated defendant not subject to any immigration enforcement action would be a quintessential unwarranted disparity." *Id.*

4

He claims that his inability to obtain FSA credits is "similar in gravity" to examples of extraordinary and compelling circumstances listed in the Sentencing Commission's policy statement such as "medical circumstances, age, family circumstances, or abuse by BOP personnel." *Id.* at 4. He highlights some cases in which district courts found extraordinary and compelling reasons for a sentence reduction under similar facts, particularly *United States v. Oprea*, No. 11-CR-94, 2023 WL 6958690 (D.N.H. Oct. 20, 2023).

In *Oprea*, the court addressed a nearly identical request for a belated term of supervised release from a Romanian prisoner and ultimately granted the supervised release term:

> Resentencing [Oprea] to serve an *additional* period of supervised release will simply make him eligible to participate in the BOP-administered program that affords a limited number of qualifying inmates early release to supervision; it will not guarantee Oprea's early release. Only if Oprea meets all of the program's eligibility requirements—as determined by the BOP—will he be afforded early release. Indeed, for Oprea to qualify for early release to supervised release, the BOP must, among other things, determine that he poses "a minimum or low risk to recidivate pursuant to the last reassessment of the prisoner." 18 U.S.C. § 3624(g)(1)(D)(ii). Inmates who pose a potential danger to the community—that is, those more likely to recidivate—are not eligible to apply earned FSA time credits toward early release. *See* 18 U.S.C. § 3624(g)(1)(D)(i)[-](ii). And, of course, if released to supervision, Oprea is likely to be deported.
> 
> ...
> 
> Viewing the totality of the circumstances presented by Oprea's petition, the court finds there are "extraordinary and compelling reasons" that warrant the modification of his sentence so that it includes a term of supervised release. *See* 18 U.S.C. § 3582(c). Indeed, but for Oprea's likely deportation, the court would have originally sentenced him to a significant period of supervision. Absent such relief, the goals of the First Step Act cannot be fully realized. Moreover, nothing in the record counsels against affording Oprea the opportunity to be *considered* by the BOP for early release under the First Step Act.

*Id.* at *3-4; *see also United States v. Nunez-Hernandez*, No. 14-cr-20-8, 2023 WL 3166466 (D. Minn. Apr. 27, 2023) (granting similar relief).

But other district courts have refused to add a term of supervised release in similar circumstances, as seen in *United States v. Dikshit*, No. 21-cr-760, 2023 WL 8827544 (S.D.N.Y. Dec. 21, 2023):

> This court has no intention of imposing a term of supervised release on Dikshit so that he can get good time credits and get out of jail earlier. [The court] quite deliberately did not impose a term of supervised release on Dikshit. Knowing that Dikshit would not be able to get out of jail prior to the expiration of his sentenced term of incarceration explains why he got a jail sentence of just two years, not the longer jail sentence that he richly deserved. Dikshit has not demonstrated any extraordinary or compelling circumstance that is the touchstone of a motion for compassionate release[.]…I absolutely decline to exercise any power I might otherwise have to shorten Dikshit's sentence…Mr. Dikshit should serve his full two years—after which I trust he will be deported. And, in the unlikely event that Dikshit is not deported immediately after serving his sentence (and the court continues to believe that he will be deported), he will have the good fortune not to be burdened with complying with the strictures of supervised release. He should be grateful for small favors.

*Id.* at 2 (internal citations omitted) (footnote omitted); *see also United States v. Bevz*, No. 21-cr-618, 2023 WL 8936323, at *1 (S.D.N.Y. Dec. 27, 2023) ("Although Bevz is not yet subject to a final order of removal, he correctly acknowledges that his deportation is 'inevitable.' Indeed, this Court sentenced Bevz on the express understanding that he would be 'deported immediately' following his release from prison. Therefore, Bevz's ineligibility for early release does not constitute an extraordinary and compelling reason for modifying his sentence.") (internal citations omitted)).

Even more recently, the court in *United States v. Iossifov*, No. 5:18-cr-81-REW-MAS-15, 2024 WL 4906480 (E.D. Ky. Nov. 27, 2024) found that the court's deliberate refusal to impose a term of supervised release at sentencing because of likely deportation was not an extraordinary and compelling circumstance:

> The Court was deliberate at the time of Iossifov's sentencing in declining to include a term of supervised release. It based this decision on the Sentencing Guidelines,

6

> which state that "[t]he court ordinarily should not impose a term of supervised release in a case in which supervised release is not required by statute and the defendant is a deportable alien who likely will be deported after imprisonment." USSG § 5D1.1(c). At sentencing, the Court further explained that it was "following the recommendation in § 5D1.1c, [which] elected against a supervision term. Iossifov will be deported following service of his sentence; his return to the U.S. is highly unlikely. The Court perceives no deterrent value in a supervision term." DE 1062 at 6. Although he may not yet be subject to a final order of removal, like in *Benz*, the Court here sentenced Iossifov on the express understanding that he would be deported following service of his sentence.
>
> ...
>
> What Iossifov really seeks is post-hoc manipulation of his sentence to create a pathway to earlier release. The Court has no appetite and sees no authority for modifying his sentence in this way, effectively adding nominal carceral time but then affixing an inapplicable SR term just to facilitate a different ultimate result. That is not what § 3582 allows or envisions. The Court sentenced with plain intent not to impose supervised release. This tracked the guidelines and was [as] a result fully ordinary and not compelling.

*Iossifov*,, 2024 WL 4906480, at *9.

The Court finds case like *Iossifov* and *Dikshit* more persuasive than *Oprea*. At bottom, the Court deliberately chose not to impose a term of supervised release because none was statutorily mandated and Defendant will likely be deported upon his release from prison—a reality that he does not contest here. And that result is in line with the plain language of the Sentencing Guidelines. *See* USSG § 5D1.1(c). Because the sentence imposed tracked the Guidelines, it was not extraordinary or compelling; it was instead "fully ordinary" and therefore insufficient to warrant a sentence reduction. *Iossifov*, 2024 WL 4906480, at *9.

**B.** *The § 3553 Factors Weigh Against Release.*

Finally, even if Defendant could show extraordinary and compelling circumstances warranting a compassionate release, the sentencing factors in section 3553(a) do not favor a compassionate release. Section 3553(a) requires the Court to consider, among other things, whether

7

a sentence "reflect[s] the seriousness of the offense," "promote[s] respect for the rule of the law," and "provide[s] just punishment for the offense." § 3553(a)(2)(A). The Court is not persuaded that these factors support Defendant's request.

Defendant was convicted of selling kilogram quantities of methamphetamine and was held responsible for 9.9. kilograms of methamphetamine, which had been imported from Mexico. Doc. 70-1 at 6, ¶20. And Defendant had multiple prior arrests related to alien smuggling. *See id.* at 7, ¶36-37. Were the Court to impose a term of supervised release that would allow Defendant to, in effect, get out of jail sooner, the modified sentence would not "reflect the seriousness of the offense," "promote respect for the law," or "afford adequate deterrence to criminal conduct[.]" *See* 18 U.S.C. § 3553(a)(2)(A). Thus, the § 3553(a) factors weigh against a sentence modification. This is an independent justification for denying Defendant's motion.

In sum, Defendant fails to show an extraordinary and compelling reason for relief under § 3582(c)(1)(A) or that the applicable sentencing factors support a sentence modification, so his request for reconsideration seeking that relief will be denied.

## CONCLUSION

Defendant Favian Arredondo Mendoza's "Request for Reconsideration Based on Supplemental Authorities" (Doc. 123) is **DENIED**.

SO ORDERED.

DATED: January 6, 2025.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE